IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | Case No: 09 CR 50021 |
| | ) | |
| v. | ) | |
| | ) | Judge Philip G. Reinhard |
| Michael Estell, | ) | |
| | ) | |
| Defendant. | ) | |

### ORDER

For the following reasons, the court finds the government has proven by a preponderance of the evidence defendant violated the terms of his supervised release by viewing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B).

### OPINION

**BACKGROUND**

On February 16, 2018, the government filed a motion for rule to show cause why defendant's supervised release should not be revoked [45]. In support of its motion, the government alleged, among other things, defendant violated the condition that he "'shall not commit another federal, state or local crime' in that on October 27, 2017, a search of defendant's residence was conducted by the probation office during which a digital camera and MicroSD card was confiscated by the probation office, which after forensic analysis revealed the existence of numerous images of illegal child pornography" (paragraph 3 of the government's rule to show cause [45]). The court held an evidentiary hearing on October 18, 2018.[1]

**EVIDENTIARY HEARING**

Defendant and the government stipulated to eight government exhibits:

* Defendant's judgment, filed on October 7, 2010, finding him guilty of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B), sentencing him to 24 months imprisonment and 25 years of supervised release. Exh. 1.
* United States Probation Office evidence/property receipt dated October 27, 2017, from the search of defendant's residence. Exh. 2.

---

[1] In its motion, the government also alleged seven other violations of defendant's supervised release, as noted in the government's rule to show cause. At the evidentiary hearing, defendant admitted to four violations - paragraphs 1, 4, 5, and 8. The government dismissed three alleged violations – paragraphs 2, 6, and 7.

1

* Sketch of defendant's residence searched in October of 2017. Exh. 3.
* Photograph of black camera case inside an open drawer from defendant's master bedroom. Exh. 6.
* Same photograph of open drawer with Cannon camera outside of case. Exh. 7.
* Photograph of Cannon camera located in drawer of defendant's master bedroom.
* Cannon camera. Exh. 4.
* MicroSD card located inside Cannon camera. Exh. 5.

One witness was called at the hearing. Stephen Holmes, a Senior United States Probation Officer and forensic examiner from the Eastern District of Missouri, testified he conducted a forensic examination of the Cannon camera ("camera") and MicroSD card ("SD card") from the camera located in defendant's residence pursuant to the search.[2] Holmes testified the only way for the camera to take pictures would be with an SD card (memory card). By analyzing metadata included in the photographic images using forensic software tools, Holmes determined there was evidence on the SD card that pictures were taken with that model of camera. Holmes was also able to determine that the SD card was also used to store images taken with an Android smartphone; specifically, some of the images contained information demonstrating they were taken with a Kyocera Zio camera, indicating they were taken with a Kyocera Zio smartphone (an Android device). Further, Holmes was able to distinguish (through the file structure – the date imbedded in the images) between the images created by the camera and the images created by the Kyocera Zio smartphone. Holmes testified that the file path where some of the images were saved indicated a software that would have allowed the user to view images saved on the SD card through the Kyocera Zio smartphone.

Holmes testified he identified a photograph of defendant (a "selfie") on the SD card, which was taken by a Kyocera smartphone on July 22, 2012 and put on or copied to the SD card on December 3, 2012. Holmes' forensic analysis of the SD card also indicated a picture of defendant's wife, placed on the SD card on December 3, 2012; a picture of defendant in his underwear placed on the SD card on October 6, 2013; and a picture of defendant playing video games taken on March 7, 2014 (Holmes was unable to determine the date this image was placed on the SD card). All images were determined to have been taken by a Kyocera Zio smartphone.

Holmes also discovered images of child pornography on the seized SD card. Five separate exhibits of images of child pornography were admitted into evidence at the hearing. These images depict naked, prepubescent girls in sexual positions. Holmes testified all five images were viewed using an Android device on January 3, 2014. (Government Exhibits 17 – 21.)

Holmes further testified to two sets of screenshots from two separate videos located on the SD card. Holmes was able to determine that the videos were most likely taken with an Android device. The first video was created on May 4, 2013, and the second video was created on October 14, 2013. Both videos were sexual in nature and included defendant's wife undressed. Holmes testified it was his opinion that that the device (camera or smartphone) used to create the images of defendant and his wife was the same device used to view the child pornography. Holmes based his opinion on the file structure in the images, the naming of the

---

[2] Holmes testified the SD card was manufactured in China.

folders the images were located in, and the time/date stamps on the pictures to show that the capturing of the images of defendant and his wife occurred both before and after the child pornography was viewed.

On cross-examination, Holmes testified receiving and examining multiple other items from the search of defendant's residence that did not contain anything of evidentiary value, including DVDs, VHS tapes, Xbox 360 hard drive, USB devices, portable hard drive, and a laptop computer. Holmes also testified that it would be highly unlikely that the images identified as having been created on the Kyocera Zio smartphone could have been viewed using the seized camera, that no Kyocera Zio smartphone was recovered, and that there was no indication defendant had exclusive control over the smartphone.

**ANALYSIS**

The government argues defendant violated the terms of his supervised release by viewing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) – Certain activities relating to material constituting or containing child pornography. Under the statute, it is a violation to

> "knowingly possesses, or knowingly accesses with intent to view, any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer."

18 U.S.C. § 2252A(a)(5)(B). The burden is on the government to prove defendant violated the terms of his supervised release by a preponderance of the evidence. 18 U.S.C. § 3583(e)(3) ("The court may…revoke a term of supervised release…if the court…finds by a preponderance of the evidence that the defendant violated a condition of supervised release.").

First, the court finds the images depicted in government exhibits 17 through 21 (naked, prepubescent girls in sexual positions) are images of child pornography. *See United States v. Lacey*, 569 F.3d 319, 324-25 (7th Cir. 2009) (government not required to present expert evidence to establish images depicted real children); *United States v. Dewitt*, 17-CR-110 JD, 2018 WL 5961723 at * 2 (N.D. Ind. Nov. 14, 2018) ("In a case in which the images depict subjects who are clearly prepubescent…expert testimony may not be necessary." (citing *United States v. Katz*, 178 F.3d 368, 373 (5th Cir. 1999)). The required element of child pornography has been shown by a preponderance of the evidence.

Second, the government argues it presented unrebutted evidence that the seized SD card was manufactured in China, satisfying the requirement that the materials be linked to interstate or foreign commerce. The court agrees. Finding that a digital device manufactured abroad (onto which child pornography had been copied) substantially affected interstate commerce, the Seventh Circuit said: "It would make no sense to…say that the use of a device manufactured

abroad to create copies of pornographic material would…fall outside Congress's control. After all, it is the ease of copying with digital devices that now drives the exponential proliferation of child pornography as part of a broad interstate market." *United States v. Burdulis*, 753 F.3d 255, 262 (7th Cir. 2014). Noting no disagreement from the defense, the court finds the government has proven the jurisdictional element by a preponderance of the evidence.

Finally, the heart of the dispute is whether defendant knowingly accessed the images of child pornography. Both parties agree the evidence presented by the government to establish this element is circumstantial. The fact finder may take into consideration both direct and circumstantial evidence. *See United States v. Moore*, 572 F.3d 334, 337 (7th Cir. 2009) ("A [finding] may be rational even if it relies solely on circumstantial evidence." (citing *United States v. Robinson*, 177 F.3d 643, 647 (7th Cir. 1999)); *United States v. Young*, 41 F.3d 1184, 1187 (7th Cir. 1994) (court revoked defendant's supervised release based in part on circumstantial evidence of defendant's possession of a controlled substance).

Defendant argues the government's evidence fails to prove defendant had exclusive control over any Kyocera Zio smartphone or the SD card. He further argues the direct evidence establishes that other persons had control over the Kyocera Zio smartphone, the SD card, and the camera. Defendant bases this argument on the fact that the picture of defendant's wife (placed on the SD card on December 3, 2012) was created on February 18, 2012 – six months prior to the beginning of defendant's supervised release, and the fact that over 68,000 images were discovered on the SD card including pictures taken of defendant's wife by other people. Defendant argues additionally that Holmes was simply drawing a conclusion that the device used to view the child pornography images was the same device which created the pictures of defendant and his wife, based on defendant's proximity to the phone during that period of time.

The government argues the evidence shows that images of defendant and his wife were taken on a Kyocera Zio smartphone and placed on the SD card between December 2012 and March 2014, proving defendant and his wife possessed and used a Kyocera Zio smartphone. The evidence also shows that images of child pornography contained on the SD card were viewed using an Android device in January of 2014 – before and after defendant's access to the SD card. (As noted above, the unrebutted testimony was that a Kyocera Zio smartphone is an Android device.) Therefore, the government argues, the circumstantial evidence proves that defendant was more likely than not the person who viewed the child pornography on the smartphone. The government contends the circumstantial evidence is further strengthened by the fact that the SD card also contains images of defendant of a sexual nature and a sexual video involving defendant's wife. The court agrees. The direct evidence shows the SD card was seized from defendant's bedroom drawer. Located on the SD card are images of child pornography. The forensic examiner testified the images of defendant and defendant's wife located on the SD card were viewed both before and after the child pornography images were viewed from the same SD card. Holmes' credentials, experience and methodology have gone unchallenged and unrebutted by the defendant. The court finds the forensic examiner's testimony to be reliable and credible, and his conclusions to be supported by the evidence. Because it can reasonably be inferred that the SD card was used in the same Kyocera Zio smartphone that was used by defendant and on which the child pornography images were viewed, the government has proven by a

4

preponderance of the evidence (albeit circumstantially) that defendant knowingly accessed images of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B).[3]

**CONCLUSION**

For the above reasons, the government has proven defendant violated the terms of his supervised release by viewing child pornography as alleged in paragraph 3 of the government's rule to show cause in violation of 18 U.S.C. § 2252A(a)(5)(B). The court further sets a briefing schedule on whether 18 U.S.C. § 3583(k) requiring a five-year mandatory minimum sentence is constitutional[4] as follows: defendant's brief is due January 31, 2019 and the government's brief is due February 28, 2019. Following the court's decision on this issue, the court will set a dispositional hearing on the finding on paragraph 3 and the admissions to paragraphs 4, 5, and 8.

Date: 1/03/2019               ENTER:

                              _____
                              United States District Court Judge

                                        Electronic Notices. (LC)

---

[3] The court agrees with the government that, considering the images themselves, defendant knew he was viewing child pornography.
[4] This issue is pending before the United States Supreme Court – *United States v. Haymond*, No. 17-1672 (certiorari granted October 26, 2018 – question presented: "Whether the court of appeals erred in holding 'unconstitutional and unenforceable' the term of supervised release, and to impose five years of reimprisonment, following its finding by a preponderance of the evidence that respondent violated the conditions of release by knowingly possessing child pornography.").